## RECOVERY FROM A MUNICIPALITY FOR WORK DONE UNDER AN INVALID LAW.

[Common Pleas Court of Knox County.]

THE STATE OF OHIO, EX REL W. J. BERRY, v. THE CITY OF MT. VERNON ET AL.*

Decided, 1903.

Constitutional Law—Improvement of Streets—Pleading Showing Juris-
diction of Council—Delegation of Power—Estoppel—Refusal of Mu-
nicipality to Levy Assessment—Remedy of Contractor—Mandamus
—Application of Section 2702.

1. If the material and essential facts necessary to give council authority
to proceed .with a street improvement are stated in a petition in-
volving action with reference thereto, recitals·which are mere con-
clusions of law may be treated as surplusage and the petition al-
lowed to stand.

2. The facts giving council jurisdiction are, filing of a petition for the
improvement with a statement as to the material to be used, pub-
lication of notice, a hearing before council, and a finding that the
petition was signed by the requisite number of abutting owners and
that the improvement is necessary.

3. The act of April 4, 1900, relating to the improvement of streets in
cities of the second class and fourth grade, is unconstitutional for
lack of uniformity of operation.

4. But a petition, evidently drawn with reference to the provisions of
this act, is still good against demurrer when its allegations bring
it within the provisions of the general laws on that subject.

5. A contract for a street improvement which provides that the work
shall be done to the satisfaction of the civil engineer and paving
committee, does not exhibit such a delegation of authority as to
render the contract void.

6. One who has performed work for a municipality in accordance with
his contract and has not been paid therefor, has a right to a judg-
ment at law for the contract price, and he can not resort to man-
damus to compel the levying of an assessment or tax to pay his
judgment until it appears that it can not be enforced by execution.

SEWARD, J. (orally).

The contention in this case is based upon a motion to make
the petition more definite and certain, by requiring the relator

*Affirmed by the Supreme Court (reported),

to set out in his petition what the necessary steps were which were taken by the city council; and upon a general demurrer to the petition.

The petition alleges, in substance, that Mt.' Vernon was, before the passage of the municipal code, in 1902, and at the time of the matters complained of, a municipal corporation of the second class and fourth grade; that the defendant, Charles C. Iams, president of the city council, and the other defendants, whose individual names are set out, are members of said city council; that said city, by and through its council, upon a petition signed by a majority of the owners of the feet front of abutting owners of real estate on Gambier avenue, between Main and Rogdre street, after having given due notice of the filing of the petition, found and determined that a majority of the owners of the feet front of the real estate abutting upon the proposed improvement had signed said petition for the improvement of said avenue; that the material petitioned for was proper material to be used in the improvement; that it was necessary to make the impropement asked for, and the council declared, by resolution, that it was necessary to make the improvement and assess the cost thereof, except at the intersection of streets, back upon the abutting property, and to issue bonds of the city according to law for the payment of the costs and expenses of making the improvement. The relator further avers that the plans and specifications were prepared by the city through its officers; that it advertised for bids for the work and furnishing the material according to the plans and specifications, and that said city had; by and through its council, taken all necessary steps, and had the right and authority under the laws of Ohio to accept the bid of relator, and to make and enter into a contract with him for the furnishing of the material and doing the work in making said improvement.

The relator avers that on January 8, 1902, the city, through its council, accepted his bid, and on that date made and executed a contract with him by which he was to grade and put down the pavement according to the plans and specifications on file, and that he was to do the work in a workmanlike manner, and to the satisfaction and acceptance of the civil engineer and paving

committee. That the improvement was to remain in good condition for the period of five years from the acceptance of the same by the civil engineer and paving committee, and the city was to retain a per cent. of the contract price until the end of that period. He sets out what he was to receive for the various items constituting the completed work, and avers completion of the work according to contract and to the satisfaction and acceptance of the civil engineer and paving committee, and avers that the completed work was inspected on November 14, 1902, by the civil engineer and paving committee, and that their officers accepted the same as complying with the terms of the contract. He avers that notwithstanding the work was done to the satisfaction and acceptance of the civil engineer and paving committee, and notwithstanding they accepted the work and improvement, and recommended that the city pay for the same according to the contract, the council have failed to take any steps necessary to be taken by it; to issue and sell bonds or pay him for the same. He sets out the various items furnished, with the cost, making the aggregate amount under the contract. $28,064.24. He avers that no part of that sum has been paid him, and that the council has refused to take the necessary steps to pass the necessary ordinance for the issuing and sale of the bonds or for assessing the cost of making the improvement upon abutting real estate; and he prays that a writ of mandamus issue, requiring the council to show cause why they should not pass the ordinance providing for the assessment upon abutting property, and an ordinance for the issuing and sale of the bonds of the city, and out of the proceeds to pay him said sum of $28,064.24.

1st. As to the motion to make more definite and certain:

The petition alleges the corporate capacity; its grade and class; the members of the council, and the president of that body; the petition of the owners of a majority of the feet front for the improvement; the giving of due notice; the finding by the council that a majority of the owners of the feet front on the street sought to be improved had signed the petition; that the material petitioned for by the petitioners was proper material; the finding that it was necessary to make the improvement asked for; the passage of a resolution declaring that it was necessary to make

the improvement by grading and paving the same, and assess certain portions of the cost back upon the abutting property, and to issue bonds of said city for the payment of the cost and expense of making the improvement; avers that city prepared plans and specifications. That relator's bid upon said work was the lowest bid. And then the pleader says that the city had, by and through its council, taken all the necessary steps and had the right and authority to accept the bid of relator under the laws of Ohio, and to enter into a contract for the work; and this last clause give rise to the motion.

It would be necessary to a good petition that the pleader should state the jurisdictional facts necessary to give the council authority to move or take authority in the matter. The statement that the city, through its council, had taken all the necessary steps to authorize it to enter into a contract, is clearly a statement of a conclusion of law, of an omnibus character, and not a statement of a material fact, and if there were no other facts stated by the pleader except that the city took all the necessary steps, etc., the motion should be sustained.

But if the petition states the material and essential facts necessary to clothe the council with authority to proceed in the matter, then the omnibus clause should be disregarded as surplusage, and might be liable to a motion to strike out.

A very good way to determine the matter raised by the motion would be to treat the petition as though the words indicated as conclusions of law were not in the petition—were entirely stricken out. Would the petition still be complete as to the jurisdictional facts?

The petition was evidently drawn under the provisions of the act of April 4, 1900, found in Vol. 94 O. L., 119, which provides, although it does not so appear on its face, that all cities of the second class and fourth grade are authorized and empowered to cause the streets and alleys to be improved with vitrified brick, etc., when a majority of the owners of real estate bounding and abutting on the street sought to be improved between designated points represented by the feet front, petition therefor. The petition shows that such a petition was filed.

The second section provides that the petition shall be signed by a majority of the owners of the feet front, stating the number of the feet front owned by each petitioner, and shall state material to be used. The petition shows that it was signed by the requisite number and contained a statement of the material to be used.

Section 3 provides that when such petition is filed council shall give notice of the filing thereof, in some newspaper published and of general circulation in said city, for ten days. The petition says due notice was given; that a hearing was had; that a majority of the owners of feet front of real estate were found to have petitioned for the improvement; that it was found that the material was proper. It is provided that the council shall declare by resolution that such improvement is necessary. This, the petition alleges, was done. The court thinks the allegations of the petition as to the jurisdictional facts are ample under this statute, passed April 4, 1900, and the motion may be overruled, and exceptions.

But it is claimed that this act of April 4, 1900, is in conflict with Section 26 of Article II of the Constitution, which provides that all laws of a general nature shall have a uniform operation throughout the state. It is well known and an admitted fact that all legislation which conflicts with a constitutional provision is null and void. Now, if the subject-matter of this legislation is of a general nature, then the legislation concerning that subject-matter must be of such a character as to operate alike on all such subject-matter throughout the state. The subject-matter of streets in cities and their improvement is most certainly of a general nature, and if this act does not operate uniformly throughout the state, it is such legislation as is prohibited by Section 26 of Article II.

The act in question applies only to certain cities of a certain grade and class, to-wit, fourth grade, of second class, and the court holds the act unconstitutional and as contrary to the provisions of Section 26 of Article II. But it does not follow that the petition is necessarily bad for that reason. Should the allegations of the petition bring it within the provisions of the general laws upon that subject, it would still be impervious to a general

demurrer as far as the statutory requirements are concerned. See Section 2303.

This general demurrer admits for the purpose of the demurrer the facts well pleaded in the petition.

The defendant cites Section 2702, to support the theory that the clerk must, before an ordinance for the appropriation of money shall be passed, certify that the money is in the treasury. But the court does not think this provision of the statute applies where the cost is to be assessed back upon the abutting property.

It is also claimed that the petition is fatally defective for the reason that it does not allege that the city has accepted the improvement; that the city can not delegate the authority to so accept and approve the work as to finally bind the city and make it liable simply on the approval of the paving committee and civil engineer. The court thinks that there must be either an actual or implied acceptance or approval on the part of the city, before it could be compelled to make an assessment upon the property owners for the cost of the same.

Let us look at this contract and try and ascertain what was in contemplation of the parties to the contract in the clause referring to the approval and acceptance. Was it contemplated that it should be the final approval and acceptance, or that they should oversee the work as it progressed and approve or condemn, and notify the contractor as the work was being done, so that he could have an opportunity to correct any deficiencies as he went along, and then make their report to the city council for its approval? The latter seems to me to be the most reasonable hypothesis, and frees the transaction from being obnoxious to that part of Section 1693, which provides that the power or authority to make a contract, agreement, or obligation to bind the corporation, or to make an appropriation, shall not be delegated. If the council is bound by the approval of the civil engineer and paving committee, notwithstanding it may differ as to the obligation to accept or approve, and is bound to pay upon that approval, then the creature, i. e., the engineer and paving committee, is greater than the council. If to the civil engineer and paving committee can be delegated the authority to make a final acceptance and approval, and they have so accepted and ap-

proved, then the pleader can, under the maxim, "what one does by another, he does himself," amend and make the allegation that the city council accepted and approved.

But there is, as it seems to me, a more serious difficulty and doubt about the petition, which counsel, in argument, did not refer to, and which I will speak of later on.

I will now refer to the question of estoppel, which counsel for relator claim applies.

"A municipal corporation which has entered into a void contract can not be estopped from taking advantage of its own incapacity, when suit is brought upon such contract, or other efforts are made to secure its execution." 12 R. I., 329.

Counsel for relator claim estoppel applies in this case, even though the act of April 4, 1900, is unconstitutional, and the provisions of the general law applicable has not been strictly· complied with. The demurrer could not be sustained on the finding that that act is unconstitutional alone, for the reason that the petition does not show on its face that the suit is predicated upon that act. I know that it is admitted in argument, or not seriously controverted, at least, that this is true; still, that admission, for the purpose of the demurrer, can not be read into the petition.

It is claimed by the relator that the work has been done, and that the city can not now be heard to say that it will not make the assessment or pay for the work. Counsel for relator cite 62 Ohio State, 80, as sustaining the proposition. I think the case is authority against the proposition, rather than in its favor. They also cite 59 O. S., 199. This was a suit to enjoin the collection of an assessment, to pay costs·incurred in the proceeding to establish or widen a road, under a special act of the Legislature, which was declared unconstitutional. This case shows that the plaintiff petitioned for the passage of the act; petitioned for the improvement; appealed to the probate court, and was actually instrumental in making the costs which were the basis of the assessment. The court say, at bottom of page 211:

"The costs having been incurred upon proceedings invoked by them, they are now estopped from defeating an assessment upon lands for their payment."

They also cite 44 Ohio State, 595. This was a suit brought to restrain the collection of a tax levied upon property for school purposes. A joint school district had been created under an unconstitutional act of the Legislature. The plaintiffs had availed themselves of the benefits of the schools for thirteen years, and the court holds it is too late for them to interfere by injunction against the payment of the tax.

39 Ohio State, 281: Council of the city of Columbus passed an ordinance for the improvement of High street upon a petition by property owners, who actively participated in the steps leading up to the improvement, under an unconstitutional act— *Held:* Could not enjoin assessment.

"2. The act of March 30, 1875, under which the improvement of North High street was made, having been declared unconstitutional (*State, ex rel,* v. *Mitchell,* 31 Ohio St., 592), such of the property owners as petitioned for the privileges of the act, acted as officers of election or commissioners of the improvement, voted at the election for commissioners, or actively participated in causing the improvement to be made, are estopped from asserting such unconstitutionality.

"3. A petitioner for the privileges of the statute will be estopped to deny the power under it of the city to grant his petition; but the mere fact of the petitioning will not estop him from objecting that the subsequent proceedings of the city have been conducted in violation of the requirements of the statute.

"4. Such petitioner has the right to assume the performance of its duty by the city council, which was, before acting upon the petition by ordering the improvement, to ascertain whether a sufficient number had signed to confer jurisdiction.

"5. Active participation in causing the improvement to be made will estop the party engaged therein from denying the validity of the assessment, but to create an estoppel from silence, merely, it must be shown that the owner had knowledge: (1) That the improvement was being made; (2) That it was intended to assess the cost thereof, or some part of it, upon his property; (3) That the infirmity or defect in the proceedings existed which he is to be estopped from asserting; and, (4) It must appear that some special benefit accrued to his property from such improvement which it is inequitable, under the circumstances, that he should enjoy without compensation."

In the 31st Ohio State, 592, it is held that notwithstanding the unconstitutionality of the act, where an abutting property owner

has caused a street to be improved, under the act, and bonds of the city to be negotiated to pay for the improvement, all who participated in causing the improvement to be made are estopped from denying the validity of the assessment made to pay such bonds. Bonds in this case were issued and negotiated to .raise funds to complete the work. Here the city is relator, and seeks to make the commissioners assess cost on abutting property.

"Under these circumstances," says the court, "we are of opinion that the defendants and those who have participated with them in causing the improvement to be made, are estopped from denying the validity of the assessment. Having voluntarily availed themselves of the provisions of the act, to create an indebtedness for the benefit of their property, good faith requires that they should be thus estopped."

Counsel for the defendant cite 58 Ohio State, 558, a suit by Miller to recover balance due for sewer and catch-basins put in at intersections of certain streets. Miller had contracted with city for work; was engaged in completing it when instructed by civil engineer and committee on drainage to make a change at a cost of $200. The court say, at page 575:

"The corporation should not be estopped by the acts of its officers to set up these statutes in defense of contracts made in disregard of them. It would be idle to enact those statutes, and afterward permit their practical abrogation by neglect or other misconduct of the officers of the municipality. If such effects should be given to such acts of municipal officers it would defeat the operation of the statutes. The strict enforcement of these provisions may occasionally cause instances of injustice; it is possible that municipal bodies may secure benefits under a contract thus declared void and refuse to make satisfaction. In the nature of things, however, these instances will be rare. Those who deal with public agencies entrusted with the management of municipal affairs usually experience liberal treatment."

In 54 Ohio State, 439, plaintiffs brought suit for paving and grading Livingstone avenue, at a cost of $8,563.52. Common pleas court held for plaintiff. Terms of contract were: That city was not to be liable until after plaintiffs had exhausted the assessment against abutting property. After completion of contract, some, if not all of them who petitioned for the improve-

ment, brought suit to enjoin assessment. Circuit court found assessment irregular, and apportioned the actual cost and expenses against abutting property, under Section 2289. Council failed to publish for bids for the required time; assessment held irregular.

"The owners of the abutting property were relieved of any obligation to pay the contractors, plaintiffs in error, any sums excepting the actual cost of the improvement, because of the omission of the city council to cause notice to bidders to be advertised according to the requirements of Section 2303, Revised Statutes. That section requires such notice to be published for four weeks in two newspapers published, and of general circulation, in the city, where the estimated cost of the improvement exceeds five thousand dollars. The estimated cost of the improvements in this cause exceeded that sum. A notice calling for bids was published, but the mode or length of time does not definitely appear, the record merely showing that it was for less than the statutory period. The duty of publication belongs to the city council. In omitting to make it in the manner prescribed by the statute, the city council violated that duty. Who is to suffer for this default? Ordinarily a principal is answerable for a default of his agent in the line of the agent's duty. If, however, that general principle should be invoked as the sole arbiter of the question, much difficulty might arise in its application. Doubtless the council of a municipal corporation is generally its agent, but that the Legislature might impose duties upon that body other than those pertaining to the entire municipality, is conceivable," etc.

Page 452: "There are no equitable considerations that require the whole body of the tax-payers of the city to contribute to a fund to pay the plaintiffs in error. The latter, as we have seen, have been reimbursed for their expenditures made in behalf of the improvements. They are now seeking the profits of the transaction, which, if paid by the city, must be from funds raised chiefly by those who were not appreciably benefitted by the work done and materials furnished. The plaintiffs in error, therefore, must recover, if at all, not upon any equitable grounds, but upon a strict legal right. We think there is no hardship in requiring them, and all other parties who undertake to deal with a municipal body in respect of public improvements, to investigate the subject and ascertain at their peril whether the preliminary steps leading up to contract and prescribed by statute, have been taken. No high degree of vigilance is required of

persons thus situated to learn the facts.  They are dealing with public agencies whose powers are defined by law, and whose acts are public transactions, and they should be charged with knowledge of both.  If the preliminary steps necessary to legalize a contract have not been taken, they can withdraw from the transaction altogether, or delay until the steps are taken,'' etc.

In the 65 Ohio State, page 219, *The City of Wellston* v. *Morgan,* Morgan sued the city for gas for three years.  On page 228, the court say:

"There has been no common-law-implied municipal liability in this state since the passage of the act of April 8, 1876, amending Section 97 of the municipal code (73 O. L., 125), and carried into the Revised Statutes as Section 1693, because that section conflicts with the common law as to such liability; and whenever a statute is in conflict with a rule of the common law, or of equity, the statute must prevail.  Before the passage of that act there were holdings by this court which seemed to recognize implied municipal liability, notably, *Cincinnati* v. *Cameron,* 33 Ohio St., 336; and since that time, there have been some expressions in opinions which seemed to recognize the same implied liability, but in none of those later cases were the provisions of the statute invoked by counsel or considered by the court, and in the late cases of *McCloud* v. *Columbus,* 54 Ohio State, 439; *City of Lancaster* v. *Miller,* 58 Ohio St., 558; *Buchanan Bridge Co.* v. *Campbell,* 60 Ohio St., 406, and *Comstock* v. *Nelsonville,* 61 Ohio St., 228, full force has been given to the restrictive statutes of the state, and implied liability denied, and the doctrine established that public officers can incur obligations against those for whom they act, only in pursuance of the provisions of the statutes, and they can not deal upon the *quantum meruit,* or reasonable value plan.  With these holdings we are content.''

But the most serious objection to the petition, as the court views it, is as to whether the petition does not show on its face that the relator has a plain and adequate remedy in the ordinary course of the law.  Section 6744, R. S., provides that the writ shall not issue if he has.  The relator alleges that the city entered into a contract with him for making the improvement.  That he has completed the work according to the contract, and that he has not been paid.  Now, if these facts are true, has he

not a right to a judgment at law against the city for the contract price? He is not interested in the question of the assessment. He did not agree to wait until the assessment is made or collected for his pay, or until the bonds are sold. The city agreed to pay him when the work was completed, excepting 7 1-3 per cent., which was to be paid him at the end of five years, under certain stipulations.

Mandamus will not lie where there is a plain and adequate remedy at law, or in equity. 42 O. S., 30; High Extraordinary Legal Remedies, Section 393 (Note 1, on page 278); 61 Ohio St., 628, 630; High, Section 313.

The relator can bring his action against the city; recover his judgment, and if he can not enforce it by execution, can then resort to mandamus to compel the levying of a tax or assessment to pay the judgment.

*Waight & Moore,* for plaintiff.

*B. B. Graham* and *F. V. Owen,* for defendant.